## Patterson v. Harrisburg Trust Company, Appellant.

*Negligence—Master and servant—Dangerous machine—Notice.*

Where a workman is injured by the automatic starting of a dangerous machine the employer is liable, if it appears that the machine for five or six years before the accident had frequently started in the same way, that this fact was well known in the shop, that the injured man had not been warned of the danger, and was hurt the first day he went to work.

Argued Feb. 1, 1905. Appeal, No. 7, May T., 1904, by plaintiff, from judgment of C. P. Dauphin Co., Sept. T., 1903, No. 251, on verdict for plaintiff in case of Banks Patterson v. Harrisburg Trust Company, receiver of the Dauphin Bridge and Construction Company. Before MITCHELL, C. J., DEAN, FELL, POTTER and ELKIN, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before KUNKEL, J.

The facts appear by the opinion of the Supreme Court.

Verdict and judgment for plaintiff for $1,701.60. Defendant appealed.

*Error assigned* was in refusing binding instructions for defendant.

*Lyman D. Gilbert*, with him *Philip T. Meredith*, for appellant.—A servant or employee assumes the risk of all dangers in his employment, however they may arise, against which he may protect himself by the exercise of ordinary observation and care, and the master's liability arises only from the fact that he subjects his servant to dangers which in good faith he ought to provide against; but he is not responsible for those dangers to which the servant voluntarily subjects himself: Pittsburg v. Connellsville R. R. Co. v. Sentmeyer, 92 Pa. 276; Service v. Shoneman, 196 Pa. 63; Corcoran v. Wanamaker, 185 Pa. 496; Titus v. Braddock, etc., R. R. Co., 136 Pa. 618; McAvoy v. Penna. Woolen Co., 27 W. N. C. 450.

As a legal proposition it is submitted that it is not enough to show that the defect existed at the moment of the accident, in support of which the following cases are cited: Mixter v.

Imperial Coal Co., 152 Pa. 395 ; P. & R. R. R. Co. v. Hughes, 119 Pa. 301 ; Mensch v. Penna. R. R. Co., 150 Pa. 598 ; Baker v. Allegheny Valley R. R. Co., 95 Pa. 211.

*James M. Barnett,* of *Barnett & Son,* with him *C. H. Bergner,* for appellee.—It is the duty of an employer to warn an inexperienced employee of dangers not in themselves obvious, which are unknown to the employee, and of which the employer has, or must be presumed to have, knowledge : Creachen v. Carpet Co., 209 Pa. 6 ; Dynes v. Bromley, 208 Pa. 633 ; Levy v. Rosenblatt, 21 Pa. Superior Ct. 543, 547 ; Tagg v. McGeorge, 155 Pa. 368 ; Welsh v. Butz, 202 Pa. 59 ; Lebbering v. Struthers, 157 Pa. 312.

Positive proof that the employer had knowledge of the danger is not required. If the evidence is sufficient to warrant the inference that the defendant had, or ought to have had, such knowledge, the case is for the jury : Bier v. Standard Mfg. Co., 130 Pa. 446 ; Mixter v. Imperial Coal Co., 152 Pa. 395, 397 ; Tissue v. B. & O. R. R. Co., 112 Pa. 91 ; Mensch v. Penna. R. R. Co., 150 Pa. 598, 603. This proposition is not in conflict with the rule that the employer is not presumed to have knowledge of a latent danger or defect in tools, machinery or materials, for which the cases cited by the appellant, viz : McAvoy v. Penna. Woolen Co., 27 W. N. C. 450 ; Service v. Shoneman, 196 Pa. 63 ; Corcoran v. Wanamaker, 185 Pa. 496 ; Baker v. Allegheny Valley R. R. Co., 95 Pa. 211, are authority.

The employer's knowledge of a defect may be inferred from the notoriety of its existence or from the length of time it has existed : Walkowski v. P. & G. Consolidated Mines, 41 L. R. A. 33, note VI, b and d.

The employee does not assume the risk of a danger not ordinarily incident to his employment and not obvious to him : Hoffman v. Clough, 124 Pa. 505 ; O'Brien v. Sullivan, 195 Pa. 474 ; Trainor v. Railroad Co., 137 Pa. 148 ; Penna. R. R. Co. v. Zink, 126 Pa. 288 ; Bannon v. Lutz, 158 Pa. 166 ; Kehler v. Schwenk, 151 Pa. 505.

OPINION BY MR. JUSTICE FELL, March 6, 1905 :

In the business of manufacturing structural iron and steel,

conducted by the defendant as a receiver, use was made of a large stationary riveting machine driven by compressed air. The pieces of iron and steel to be riveted were held in place by bolts which passed through them, and were swung from a traveling crane which moved on girders above the machine and carried the pieces between its jaws. In each jaw there was set a cylindrical piece of steel on which there was a hollow or cup, the size and shape of the head of a rivet. One of the cups was fixed, the other was movable, and its position was changed by the use of a lever. The hot rivets inserted in the holes in the pieces were brought successively in a position where one end of a rivet would fit into the immovable cup. The other cup was then driven forward by turning on the compressed air with such force as to head the rivet. When rivets had been placed in all the holes except those occupied by the temporary bolts, the pieces were carried forward a few inches and the bolts were removed. The pieces were then swung back between the jaws of the machine, rivets placed in the empty holes, and the work of riveting was completed. A number of men were employed about the machine in handling the structural iron, heating and inserting the rivets and adjusting them to the cups, and in removing the temporary bolts.

On the first day of his employment in the shop the plaintiff was directed to remove the bolts. In doing this he stood a foot and a half from the machine and loosened the nuts with a wrench and took out the bolts with his hands. He had been engaged at this work only a few hours when the pieces from which he was removing a bolt swung back between the jaws of the machine, his glove caught on a nut and his hand was carried back between the cups. At the same instant the machine started in motion, the cups closed and his hand was crushed between them.

What caused the machine to start no one seemed to know. The operator was some distance from it and no one touched it at the time. Witnesses, some of whom operated the machine and others of whom had worked about it, testified that frequently it started automatically and that it had done this from the time it was first placed in the works five or six years before, and that this was generally known in the shop. What caused the automatic starting of the machine was not shown

further than that it was probably due to the variation of air pressure on the valves. It was shown that the self-action was not due to a condition brought about by wear and tear but that it was an inherent tendency, resulting from the machine's construction. The danger then to which the plaintiff was exposed was not one ordinarily incident to his employment nor obvious to him. No one would anticipate the sudden starting in motion of such a machine because of some peculiarity of its construction. When it was at rest and no one was near it to start it by accident or design, it was apparently as harmless as any other inanimate and quiescent object, and the plaintiff might assume he was safe in standing close to it where his work required him to be. The danger was a hidden one, of the existence of which it might be inferred that his employer knew or should have known. Against such a danger there was a duty to warn him.

The case was clearly one for the jury and it was submitted in a manner that carefully and fully guarded the defendant's rights.

The judgment is affirmed.